No. 28,073.

THE DERBY OIL COMPANY, *Appellant,* v. CHARLES W. JOHNSON, Receiver of the Farmers State Bank of Kingman, et al., *Appellees.*

(266 Pac. 933.)

Opinion filed May 5, 1928.

*Charles G. Yankey, John L. Gleason* and *Kenneth K. Cox,* all of Wichita, for the appellant.

*Clark A. Wallace* and *Paul R. Wunsch,* both of Kingman, for the appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.: The Derby Oil Company brought this action against C. W. Johnson, as receiver of the Farmers State Bank of Kingman, and R. L. Bone, state bank commissioner, to recover $20,000 upon a certificate of deposit issued to Dan F. Callihan, claimed to be the property of the Derby Oil Company, and asking a judgment requiring the bank commissioner to issue a receiver's certificate for the amount of the deposit and a writ ordering the bank commissioner to pay plaintiff out of the guaranty fund the amount due on the certificate. The court held that the plaintiff had failed to prove that it was the owner of the certificate of deposit and gave judgment for the defendants. Plaintiff appeals.

It appears that Dan F. Callihan was the treasurer of the oil company, and a director in the Farmers State Bank; that on December 3, 1923, Callihan presented a check of the oil company to himself on the bank for $20,000, and had issued to himself a certificate of deposit for that amount payable in three months after date with interest at the rate of four per cent. At the same time he stated to the bank officials that they had refinanced the oil company and were dividing up part of a $50,000 deposit in the bank between Mr.

Derby and himself, and asked the bank to issue another certificate in the amount of $15,000 payable to A. L. Derby, the president of the oil company. Callihan asked the bank to indorse the certificate of $15,000 issued to Derby, but the bank refused, and Callihan then asked them to cancel the Derby certificate. About this time the bank appears to have been in financial straits, and on a consultation with the bank commissioner it was determined to make an assessment on the stockholders of the bank for one hundred per cent and thus keep the bank open. Callihan, owning considerable stock, was called on to pay this assessment, and he offered to put up the certificate of deposit upon his assessment. He produced the certificate which had been issued to himself and sent it to the bank, and in a letter asked the bank to cancel his certificate of deposit for $20,000, and place the same in a special deposit account to be used in payment of his assessment, with the understanding that the same should be considered as an offset in case said bank should be closed. Indorsed thereon was the statement, "For double liability and balance to be applied on note." The bank failed to open on the morning of January 16, 1924, when Mr. Allen was appointed receiver, and continued to act as receiver for a considerable time, and was later succeeded by Wm. Docking. Charles W. Johnson succeeded Wm. Docking as receiver. The certificate, together with other assets, was turned over to the deputy bank commissioner, and remained in the possession of the bank's attorney until introduced as an exhibit in this case.

The plaintiff contends that the $50,000 deposit in the bank was the property of the plaintiff; that the check issued to Callihan was only for the purpose of the collection of a part of the deposit; that the certificate of deposit issued to Callihan was indorsed by him and delivered to plaintiff, and thereupon was placed in the safe in Derby's office; that he wrongfully obtained possession of it and turned it over to the bank to pay for an assessment upon his stock; that the company had never indorsed or delivered the certificate to Callihan or anyone else and was still the owner of it. Derby testified that he never authorized Callihan to take the certificate and turn it over to the bank, and that he did not know that it had been done for some time afterwards. He further stated that he did not remember the conversation had with Callihan when the certificate was brought back and placed in the safe of Derby. In regard to Callihan taking it out and sending it to the bank, he admitted that

Callihan wrote an order to his secretary to deliver the certificate to him and that she did deliver it to Callihan, taking a receipt therefor. The trial court found that the Derby Oil Company had failed to establish the allegations of its petition and had failed to prove that it was or ever had been the owner of the certificate of deposit and consequently gave judgment for defendants.

The only question presented on this appeal is whether there is testimony to support the finding of the court. The burden was upon the plaintiff to sustain the claim of ownership. The check upon which Callihan obtained the certificate was issued to Callihan personally, and the certificate was issued in his name and delivered to him. Derby testified that the check was issued and certificate obtained for the purpose of collection, but the certificate, as we have seen, was not payable for three months after its issuance; and yet plaintiff made no complaint that cash was not obtained on the check. Again, about the same time, checks of the plaintiff drawn upon the bank were honored by immediate payments and it was shown that the bank had paid all of plaintiff's checks upon presentation and had never asked plaintiff's officers to use discretion in the presenting of checks. When the check was issued to Callihan he was charged with the amount of it on the books of the plaintiff, but no credit was entered in his behalf when he returned and placed the certificate in the safe in Derby's office. Most of the documents of the plaintiff were kept in one office, while Derby's personal papers and some of the company matters were kept in another place where Derby had a safe.

There is testimony, too, that when the certificate was issued to Callihan another check in Derby's name was presented with a view of obtaining a certificate for him, and in that connection it was stated that they were refinancing the company and that Callihan and Derby were dividing up between them a part of this deposit in the bank, and these two officers appear to have been transacting the principal business of the plaintiff. In view of the fact that the checks were issued to Callihan and Derby personally, and that the certificate in question was issued to Callihan and not to the company, the transaction and accompanying circumstances tended to show that the certificate was the property of Callihan. It is true that he placed the certificate with his name indorsed thereon in Derby's safe, but what was said by him as to his purpose when he placed it there was not shown. It was not taken out of the safe surreptitiously when he obtained and sent it to the bank in payment

of the assessment. It was obtained by a written order presented by his brother to Miss Hunt, the private secretary of Derby, asking for the delivery of the certificate. She raised no question as to his right to it, and delivered it as if it was the property of Callihan and was there for safe-keeping. The deposit in the bank was evidently the money of the plaintiff, but when plaintiff drew a check upon the deposit in favor of Callihan and charged him with the amount, it was an indication that it was the property of Callihan. Derby admitted that he never demanded payment of the amount from Callihan and gave as his reason, "I knew he couldn't pay it." It further appears that no claim was made for this certificate until June or July, 1926, more than two years after Callihan had delivered it to the bank.

In view of the circumstances shown, including the entries in the books of the plaintiff, we cannot say that the finding of the trial court is without support. There being no error apparent in the record, the judgment is affirmed.